IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

QUINTON FUNK,

        Movant,

v.

                                     Criminal Case No. 2:17-cr-00062
                                     Case No. 2:19-cv-00799

UNITED STATES OF AMERICA,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner Quinton Funk's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 363), and his Motion for Reconsideration of Order Denying Motion for Extension of Time, (ECF No. 413). This case is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The court **DENIES** Funk's Motion for Reconsideration of Order Denying Motion for Extension of Time, (ECF No. 413), on the basis that Funk was given more than ample time to file a reply memorandum. Taking into consideration Funk's transfer from one facility to another, and the challenges of COVID-19, the court granted Funk three lengthy extensions of time to file his brief. In total, Funk was given *sixteen months* to file the reply memorandum. In the last order, entered January 29, 2021, Funk was told there would be no further continuances. (ECF No. 403). Also in that order, Funk was provided

with an additional four months to file his memorandum. Accordingly, Funk received substantial continuances to reply to the Government and was warned four months in advance that he would not be granted further continuances. As such, his request for another extension is without merit.

With respect to the § 2255 motion, after thorough consideration of the record, the undersigned conclusively **FINDS** that Funk is not entitled to the relief requested. Therefore, for the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Funk's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (ECF No. 363), **DISMISS** this civil action, with prejudice, and **REMOVE** it from the docket of the court.

## I.    Relevant Facts and Procedural History

In January 2017, Funk, along with four others, traveled from Craigsville, West Virginia to Atlanta, Georgia in a recreational vehicle ("RV"). (ECF No. 381-2 at 11)[1]. According to Funk's testimony at the trial of his co-conspirator, Jaclyn Burkholder, he traveled to Atlanta with the intent to purchase methamphetamine. (*Id.*). However, he claims he did not disclose this intent to his co-conspirators until "over halfway" through the trip. (*Id.* at 12). After parking the RV in downtown Atlanta, Funk and his co-conspirators traveled to the residence of his methamphetamine source where Funk obtained four kilograms of methamphetamine to sell. (*Id.* at 14-15). Funk and his accomplices remained in Atlanta for approximately one week before traveling to Charleston, West Virginia, then to Sissonville, West Virginia in order to sell one kilogram of the methamphetamine in exchange for $20,000. (ECF No. 381-2 at 23-24). Afterward,

---

[1] All citations to the record are taken from Funk's underlying criminal action, *United States v. Funk*, Case No. 2:17-cr-00062 (S.D.W. Va. Feb. 10, 2017).

Funk and his accomplices returned to Charleston and rented rooms at the Holiday Inn Express, where Funk sold additional portions of the methamphetamine purchased in Atlanta. (*Id.* at 24-26). During his stay at the Holiday Inn Express, Funk possessed a firearm and made approximately six to seven thousand dollars selling methamphetamine. (*Id.* at 26). Funk and three others were arrested in the Holiday Inn Express parking lot days later. (*Id.* at 27). Police found Funk's gun and a backpack containing approximately $28,000 in cash, (*Id.* at 49-51), and later discovered 138.87 grams of methamphetamine in the hotel room occupied by Funk. (*Id.* at 122).

On February 9, 2017, Funk was arrested a second time for distributing methamphetamine. On this occasion, police found another firearm and approximately $3,000 in Funk's possession. (*Id.* at 31, 129). The following day, Funk was charged in a criminal complaint filed in this court with possession with intent to distribute methamphetamine. (ECF No. 1). He was later indicted on one count of conspiracy to distribute 500 grams or more of methamphetamine and two counts of being a felon in possession of a firearm. (ECF No. 18).

Funk hired Attorney Timothy J. LaFon to represent him in the criminal case. (ECF No. 365 at 1). However, due to Funk's inability to pay LaFon's attorney fees, LaFon moved to withdraw, and the court granted the motion. (*Id.*). The court appointed substitute counsel for Funk, but that attorney also moved to withdraw. (*Id.*). The court ultimately appointed LaFon, in his role as a member of the court's Criminal Justice Act ("CJA") panel, to represent Funk in all further matters. (ECF No. 102).

On November 27, 2017, Funk entered into a plea agreement with the United States, which required Funk to plead guilty to the first count of the indictment, charging him with conspiracy to distribute 500 grams or more of a substance containing a detectable amount

of methamphetamine. (ECF No. 199 at 2). In exchange, the United States agreed to dismiss the two firearms counts against Funk. (*Id*.). ). Additionally, the plea agreement required Funk to "be forthright and truthful" with the United States and law enforcement and to "give signed, sworn statements and grand jury and trial testimony upon the request of the United States." (ECF No. 199 at 3). On December 5, 2017, Funk, represented by LaFon, appeared before this court (the "Sentencing Court") and pled guilty to conspiracy to distribute methamphetamine. (ECF No. 195). On February 14, 2018, LaFon filed a motion to withdraw, citing irreconcilable differences between himself and Funk. (ECF No. 219). LaFon indicated that Funk would no longer follow the advice of counsel and had ceased to communicate with LaFon. (*Id*.). The court granted LaFon's motion and appointed Michael Payne to represent Funk. (ECF No. 220).

On April 10, 2018, Funk appeared before the Sentencing Court with his lawyer, Payne. During the sentencing hearing, the parties contested the amount of drug attributable to Funk. The Sentencing Court pointed out that under the "cooperation" provision of the plea agreement, Funk was obligated to be forthright and truthful about the quantity of drug he possessed and distributed. (ECF No. 293 at 5-10). Moreover, the United States explained that Funk would be required to cooperate against a significant source of methamphetamine in Atlanta. (*Id*. at 22). Ultimately, the Sentencing Court found Funk responsible for 4 kilograms of methamphetamine and sentenced him to 262 months in prison. (ECF No. 240). Funk subsequently testified against his co-conspirator, Ms. Burkholder, at her trial on June 5, 2018. During his testimony, Funk admitted that he obtained 4 kilograms of methamphetamine in Atlanta. (ECF No. 381-2 at 15-20).

### A.    Funk's Motion

On November 7, 2019, Funk filed his Motion to Vacate, Set Aside or Correct

Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 363). Funk contends that, after receiving his sentence, he filed an appeal challenging the knowing and voluntary nature of his guilty plea. (*Id*. at 2). Ultimately, he dismissed the appeal after counsel explained that "the issue was not preserved and there was an appellate waiver ... [therefore] it would be best for Mr. Funk to voluntarily dismiss the appeal and pursue an IAC [ineffective assistance of counsel] claim on collateral review." (ECF No. 363 at 2).

In his Motion, Funk raises three (3) grounds for relief. In Ground One, he asserts that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. (*Id*. at 4). Funk argues that LaFon had a "potential conflict of interest." (*Id*.). Furthermore, he contends that LaFon failed to ensure that Funk was aware of his obligations under the plea agreement. Funk claims that he was adamant at all times that he had no desire to be a cooperating witness. (*Id*.). In addition, Funk contends that LaFon failed to challenge the sufficiency of the factual basis for the plea. (*Id*.).

In Ground Two, Funk asserts that he was deprived of due process when he entered an unknowing and involuntary guilty plea. (*Id*.at5). In support, Funk relies on the same factual allegations asserted in support of the first ground of his Motion.  (*Id*.).

In Ground Three, Funk claims that his guilty plea is not supported by a sufficient factual basis. As such, it is invalid and must be vacated. (*Id*. at 7). He contends that the count to which he pled guilty required a showing that there was at least 500 grams of methamphetamine involved in the conspiracy. (*Id*.). Funk states that the facts of the case established, at most, a violation of 21 U.S.C. § 841(b)(1)(B)(viii), which involves five grams or more of methamphetamine or fifty grams or more of a mixture containing a detectable

amount of methamphetamine. (*Id.*). Funk argues that since the facts only establish that Funk possessed 138.87 grams of methamphetamine, the Sentencing Court should never have accepted the plea. (*Id.*).

Funk provides a "Statement of Facts and Declaration" to reinforce his grounds for relief. (ECF No. 365). In this document, Funk indicates that he and LaFon developed a conflict over the $25,000 fee that LaFon wanted to be paid for representing Funk. (*Id.* at 1). Although Funk made an initial payment of $6,700 and agreed to pay the rest in installments, LaFon informed the Court that Funk had not retained him as counsel. (*Id.*). Funk claims that his inability to pay LaFon the full amount "on demand" led to an "irreconcilable difference that caused a breakdown in the attorney-client privilege." (*Id.*). Funk argues that once his court-appointed counsel, George Lancaster, withdrew from the case, LaFon was "conflicted out and should have never accepted appointment of the case because there was an alleged breach of contract between [them]." (*Id.*). He contends that he paid LaFon a substantial amount of money, and LaFon never refunded any of that money "even though he did no work on the case." (ECF No. 365 at 1).

Funk additionally states that LaFon negotiated a plea agreement, which Funk was very apprehensive to accept. Funk claims that he explained to LaFon the only plea agreement he was willing to accept was one in which his sentence was capped at ten years and did not require him to "cooperate," beyond accepting personal responsibility for his own conduct. (*Id.* at 1-2). Funk asserts that LaFon understood these requirements and told Funk the plea capped his sentence at ten years. LaFon also assured Funk that he would not have to testify or cooperate against any other person. (*Id.* at 2). As Funk understood the plea agreement, he would be in compliance with its terms as long as he was honest about his own conduct. (*Id.*). After signing the plea agreement and being

6

informed that he would have to testify before a grand jury regarding his co-conspirator's involvement, he states that "Mr. LaFon never explained to [him] that [he] could have sought to withdraw from the plea agreement." (*Id.*). Funk claims that LaFon did not want to take the case to trial, as Funk preferred, because LaFon would not be paid the "previously agreed upon fee." (*Id.*). Funk argues that had he known he would have been required to cooperate against his co-conspirator, he never would have accepted the plea agreement. Funk states that, but for LaFon's ineffective assistance of counsel, Funk would have invoked his right to proceed to a jury trial. (*Id.*).

### B.    Respondent's Response

On January 24, 2020, Respondent filed its Response to Funk's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 381). According to Respondent, Funk's claim of ineffective assistance of counsel due to a conflict of interest fails because he cannot show a conflict of interest, or that any purported conflict of interest adversely affected counsel's performance. (*Id.* at 5). Respondent argues, citing *United States v. Oliver*, 406 F. App'x 808, 811 (4th Cir. 2011), that a fee dispute does not establish an actual conflict, and Funk alleges nothing that suggests LaFon had a conflict regarding the material issues in the case. (*Id.* at 6). Furthermore, Respondent claims, LaFon was paid for his work because he was reappointed through the CJA, citing the CJA Guidelines, § 230 Compensation and Expenses of Appointed Counsel (Vol. 7). (*Id.*). Respondent contends that there is "no reason to believe that Mr. LaFon had even a potential conflict of interest." (*Id.*).

Respondent further argues that even assuming LaFon had a conflict of interest, Funk cannot show that the conflict adversely affected LaFon's performance. (*Id.*). Respondent cites *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001) in claiming that

7

courts require a three-part showing to establish that a conflict adversely affected counsel's performance:

> "First, the petitioner must identify a plausible alternative defense strategy or tactic  that his defense counsel might have pursued. Second, the petitioner must show  that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. . . . Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict."

(ECF No. 381 at 6-7). As to the first prong, Respondent acknowledges that Funk claims that the "alternate defensive strategy or tactic" that his counsel could have pursued was taking the case to trial. (*Id*. at 7). Respondent contends, however, that Funk cannot show that going to trial was a reasonable tactic or strategy under the circumstances, pointing to LaFon's affidavit, (ECF No. 377 at 4), which states that "[t]he evidence against [Funk] was insurmountable" and references the videos, photographs, and co-conspirator statements that proved Funk's guilt. (ECF No. 381 at 6-7). As evidence of Funk's "insurmountable" guilt, Respondent notes that Funk was:

> caught outside of his hotel room with a gun and $28,000 in cash. Inside the hotel room[,] police found 138 grams of methamphetamine. Police recovered a video of [Funk] with four bricks of methamphetamine. [Funk] admitted to police that he traveled to Atlanta to purchase methamphetamine for distribution. And [Funk's] co-conspirator testified under oath that [Funk] had purchased methamphetamine in Atlanta. There was no reasonable defense.

(*Id*. at 7). Therefore, Respondent argues, the second prong of *Mickens* is not satisfied. As to the third prong, Respondent asserts that Funk has failed to link LaFon's negotiation of a plea agreement to the purported conflict of interest relating to the fee dispute. (*Id*. at 7-8). Respondent reiterates that LaFon was appointed under the Criminal Justice Act, and was being paid for his service to Funk; therefore, LaFon had no plausible motivation to seek an unreasonable plea agreement. (*Id*.).

8

Respondent adds that Funk's assertion that he did not understand his plea agreement is without merit. (*Id.* at 8). Respondent relies on LaFon's affidavit at 5, in which LaFon maintains that he fully explained the plea agreement to Funk, and the agreement stated that Funk could be sentenced to prison for ten years at the minimum and for life at the maximum. (*See* ECF No. 377 at 5). Respondent also cites the plea agreement itself, which required Funk to cooperate with law enforcement as to "all inquiries" and to provide testimony upon the request of the United States:

> **COOPERATION.** Mr. Funk will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Funk may have counsel present except when appearing before a grand jury. Further, Mr. Funk agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

(ECF No. 381 at 8-9). Respondent notes that Funk initialed each page of the agreement and then signed a statement acknowledging that he understood its terms and had discussed them with his attorney. (*Id.* at 9). In addition, at Funk's plea hearing, he acknowledged that he was satisfied with LaFon's representation; that he had read and understood the plea agreement; and that he discussed it with LaFon. (*Id.* at 9-10). Respondent also notes that the court advised Funk he could face "a minimum penalty of ten years' imprisonment and up to life" by entering the plea, to which Funk acknowledged his understanding. (*Id.* at 10). Respondent concludes that Funk cannot show that he would not have pled guilty and insisted on going to trial if not for LaFon's alleged mistakes. (*Id.*).

Finally, Respondent argues that Funk's claim that LaFon should have challenged the factual basis of the plea is meritless. (*Id.* at 11-13). According to Respondent, Funk's

argument that he pled guilty to conspiracy to distribute 500 grams or more of methamphetamine, but the plea agreement's stipulation of facts referenced only 138 grams of methamphetamine, must fail. (ECF No. 381 at 11-12). Respondent claims that, although the stipulation of facts only specifically referenced the 138 grams of methamphetamine found in Funk's hotel room, it also acknowledged that Funk "travelled with [his co-conspirators] ... to Atlanta, Georgia to acquire methamphetamine." (*Id.*) (quoting ECF No. 199 at 8). Respondent indicates that the stipulation of facts does not contain each and every act known to Funk and to the United States concerning Funk's involvement in the charges. (*Id.*). Respondent emphasizes that Funk acknowledged that the amount of methamphetamine attributable to him exceeded 500 grams at his plea hearing. (*Id.*) (citing ECF No. 379 at 10-12):

> THE DEFENDANT: I traveled to Atlanta to purchase the methamphetamines for a profit.
>
> THE COURT: How much?
>
> THE DEFENDANT: Not very much.
>
> THE COURT: Tell me a little more about what all was going on in this criminal –
>
> THE DEFENDANT: More than 500 grams.
>
> THE COURT: Huh?
>
> THE DEFENDANT: More than 500 grams.
>
> THE COURT: Was that on that trip?
>
> THE DEFENDANT: That was altogether.
>
> THE COURT: Were you aware of that?
>
> THE DEFENDANT: Yes, sir, Your Honor. (*Id.* at 11-12).
> ...
>
> MR. BACAJ: Your Honor, the evidence that would have been set forth at trial

would show quite the opposite. In fact, I would – I would have anticipated that witnesses at trial would have testified that Mr. Funk obtained four kilograms of methamphetamines in Atlanta.

THE COURT: How many grams is that?

MR. BACAJ: Your Honor, I'm going to say that is 4,000 grams of methamphetamines, which would be like eight times the amount required by the statute.

THE COURT: What do you say to that, Mr. Funk?
...

THE DEFENDANT: No, Your Honor, I don't -- I don't agree with the four kilos.

THE COURT: Do you agree with the 500?

THE DEFENDANT: Yes, 500. (*Id.* at 12).

For the stated reasons, Respondent requests that Funk's motion be denied. (ECF No. 381 at 13).

## II.   **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. *Wall v. Kholi*, 562 U.S. 545, 552-53 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02-CR-65, Civ.A. 2:05-CV-91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct

a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## III.    <u>Discussion</u>

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 694.

When assessing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 690. Trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th. Cir. 1995). Courts will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all the circumstances. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th. Cir. 1977). Accordingly, "[s]urmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Here, Funk claims that his Sixth Amendment right to effective assistance of counsel was violated in several ways. First, he claims that he was represented by a lawyer with a potential conflict of interest. (ECF No. 363 at 4). Second, he alleges that counsel failed to ensure that he was aware of his obligations under the plea agreement before accepting it; thus, denying him due process. (*Id.*). Finally, Funk claims that counsel failed to challenge the sufficiency of the factual basis for the plea. (*Id.*). Funk mentions the second and third claims in Ground One, (*Id.*), but further addresses them in Grounds Two and Three, respectively. (*Id.* at 5, 7). Because there is no merit to the claims raised in Grounds Two and Three, there is no plausible ineffective assistance of counsel claim arising from Grounds Two and Three. However, to the extent necessary, ineffective assistance of counsel claims pertaining to Grounds Two and Three will be addressed in subsections B and C.

### A.    Ground One: Counsel's Potential Conflict of Interest

"As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens*, 535 U.S. at 166 (quoting *Strickland*, 466 U.S. at 694). In order to establish a claim of ineffective assistance of counsel based on a conflict of interest, a defendant must demonstrate that (1) "an actual

conflict of interest" (2) "adversely affected his lawyer's performance." *United States v. Dehlinger*, 740 F.3d 315, 322 (4th Cir. 2014) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). To establish that there was an actual conflict of interest, the defendant must "show that his interests diverged from his attorney's with respect to a material factual or legal issue or to a course of action." *United States v. Shusterman*, 712 Fed. Appx. 253 (4th Cir. 2018) (quoting *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009)). The defendant must then "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued[,] ... show that the alternative strategy or tactic was clearly suggested by the circumstances[,] ... and establish that the defense counsel's failure to pursue that strategy or tactic was clearly linked to the actual conflict." *Id.* "Adverse effects cannot be presumed ... from the mere existence of a conflict of interest." *Id.*

Funk traces LaFon's alleged conflict of interest to the outset of the criminal proceeding when Funk retained LaFon as trial counsel. Funk claims that LaFon withdrew from his representation when Funk could not immediately pay the entire fee requested by LaFon. A fee dispute "does not ordinarily establish an actual conflict because courts 'presume that counsel will continue to execute [their] professional and ethical duty to zealously represent [their] client[s], notwithstanding the fee dispute.'" *United States v. Oliver*, 406 Fed. Appx. 808, 811 (4th Cir. 2011) (quoting *United States v. O'Neil*, 118 F.3d 65, 72 (2nd Cir. 1997)). In this case, the alleged conflict is even more tenuous, because LaFon was ultimately appointed to the case by the court and was paid for his services.

In *Oliver*, the United States Court of Appeal for the Fourth Circuit ("Fourth Circuit") illustrates the defendant's burden of proving an actual conflict in a similar context. 406 Fed. Appx. 808. Oliver pled guilty for unauthorized use of credit cards. *Id.*

at 809. Later, having not paid his counsel, he claimed ineffective assistance of counsel resulting from an alleged conflict of interest over the lack of payment. *Id.* at 811. The Fourth Circuit held that Oliver had not established an actual conflict because a fee dispute does not ordinarily establish an actual conflict. *Id.* Furthermore, Oliver could not prove that the alleged conflict adversely affected his counsel's performance. *Id.* at 812. Therefore, the Fourth Circuit affirmed the conviction and sentence. *Id.*

In the instant proceeding, there is no evidence to suggest that LaFon abandoned his duty to ethically represent Funk during the criminal proceedings. The mere possibility of a conflict of interest is not enough to constitute an actual conflict. Therefore, the first prong of *Sullivan* is not satisfied, and Funk should not receive relief on this claim. "Not only is his claim speculative and conclusory because he simply states, without more, that a conflict existed because of the fee, but a simple fee dispute does not demonstrate an actual conflict." *Richardson v. Director, TDCJ-CID*, No. 6:15-cv-920, 2018 WL 7412905, at *5 (E.D. Tex. May 8, 2018).

Furthermore, as Respondent notes, following LaFon's and Lancaster's respective withdrawals from the case, LaFon was reappointed to represent Funk through the CJA Guidelines. *United States v. Funk*, No. 2:17-cr-00062-1, ECF No. 102 (June 16, 2017). According to CJA Guideline § 230.10, appointed counsel may be compensated and reimbursed for their work on defendants' cases. Moreover, § 230.40(a) states, "An attorney appointed under the CJA may not accept a payment from or on behalf of the person represented without authorization by a U.S. district, circuit, or magistrate judge on Form CJA 7." There is no evidence that following LaFon's court appointment, he abandoned his duty to ethically represent Funk as a result of Funk not personally paying for his services. Indeed, at that point, Funk was barred by the CJA Guidelines from paying

LaFon any money, unless he received authorization by a district, circuit, or magistrate judge. After being reappointed, LaFon continued his representation of Funk, filing various memorandums and motions in support of his case. Therefore, the undersigned **FINDS** that Funk fails to carry his burden of proof to show that an actual conflict of interest existed in this case.

In addition, even if there was an actual conflict of interest, Funk cannot prove that the fee dispute had an adverse effect on LaFon's performance, as mandated by *Sullivan*. A petitioner must "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued[,] … show that the alternative strategy or tactic was clearly suggested by the circumstances[,] … and establish that the defense counsel's failure to pursue that strategy or tactic was clearly linked to the actual conflict." *Stephens*, 570 F.3d at 209. To begin, Funk cannot show that the alternative strategy of going to trial was "clearly suggested by the circumstances." Much to the contrary, in fact, as the evidence against Funk was overwhelming. He was caught outside of his hotel room with a gun and $28,000 in cash. (ECF No. 381-3 at 8). Inside his hotel room, police found 138.87 grams of methamphetamine, (*Id.*), not to mention that Funk provided inculpatory statements to law enforcement upon being arrested. (ECF No. 245 at 13). In view of these facts and the likelihood of conviction, obtaining a plea agreement was a reasonable strategy; particularly, as it resulted in the dismissal of two additional counts against Funk, each of which carried a significant sentence.

In addition, Funk cannot show that the alleged fee dispute had any bearing on LaFon's advice about accepting a plea bargain versus going to trial. Funk speculates that LaFon encouraged the plea agreement, because he did not want to spend the time and effort required to take the case to trial, but Funk offers no factual support for that

conclusion. As a CJA panel attorney, LaFon regularly accepted appointed cases with full knowledge that he would not receive a fee as high as the fee he could charge as a private defense attorney; nonetheless, LaFon offered his services on the panel for many years. Therefore, the undersigned **FINDS** that Funk fails to show that LaFon's representation was in any way compromised by the initial issue over LaFon's fee. Accordingly, Funk is not entitled to relief on his claim of ineffective assistance of counsel resulting from a potential conflict of interest.

### B.    Ground Two: Denial of Due Process When Funk Allegedly Entered an Unknowing and Involuntary Plea

Funk claims that he suffered ineffective assistance of counsel and the denial of due process because of his counsel's alleged failure to ensure that he was aware of his obligations under the plea agreement. Funk claims he was "adamant at all times that he had no desire to be a cooperating witness." (ECF No. 363 at 4). He argues that he entered an "unknowing and involuntary" plea agreement. (*Id.* at 5).

The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir. 2000). Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations

of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). In other words, a defendant is bound by the representations he made in the plea colloquy unless he presents clear and convincing evidence to the contrary. *United States v. Mattocks*, 408 Fed. Appx. 717, 719 (4th Cir. 2011).

Funk claims that he explained to LaFon that he would only accept a plea agreement if it was capped at a ten-year prison sentence and did not require him to cooperate against his co-conspirators. (ECF No. 365 at 1-2). Funk "cannot demonstrate any error, plain or otherwise, nor has he established that his constitutional rights were violated," by his counsel's negotiation of the plea agreement. *Mattocks*, 408 Fed. Appx. at 719. According to LaFon's affidavit, he reviewed the plea agreement with Funk on a paragraph-by-paragraph basis and specifically discussed with him the requirement to cooperate against his co-conspirators, as well the sentencing guidelines. (ECF No. 381-4 at 5). Funk submits no evidence to refute this statement. The plea agreement itself provides that Funk may receive a penalty of "[i]mprisonment for a period of 10 years to life;" thus indicating that ten years' imprisonment was not a sentence cap, but was the lowest prison term Funk could receive. (ECF No. 381-3 at 2). Furthermore, the plea agreement included a provision for Funk's cooperation, which stated:

> **COOPERATION.** Mr. Funk will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial

testimony upon request of the United States. In complying with this provision, Mr. Funk may have counsel present except when appearing before a grand jury. Further, Mr. Funk agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

(*Id*. at 3). Funk initialed the bottom of each page and signed the last page of the plea agreement, verifying that he understood these terms and had discussed them with his attorney. (*Id*. at 7).

Likewise, Funk is bound by the representations he made in the plea colloquy "unless he presents clear and convincing evidence to the contrary." *Mattocks*, 408 Fed. Appx. at 719. He has not provided any such evidence. Instead, Funk relies on conclusory and unsubstantiated allegations of wrongdoing by LaFon, which directly contradict sworn statements made by Funk at the plea hearing. At the plea hearing, Funk testified that he had adequate time to discuss the case with his counsel, and he was completely satisfied with the legal advice LaFon gave him:

> THE COURT: Are you fully able to understand what's going on here today?
>
> THE DEFENDANT: I do, Your Honor.
>
> THE COURT: Do you believe you've had adequate time to discuss your case with your lawyer?
>
> THE DEFENDANT: I do.
>
> THE COURT: Has he been able to answer your questions about how best to proceed in this matter?
>
> THE DEFENDANT: He has.
>
> THE COURT: Are you completely satisfied with the legal advice he's offered you?
>
> THE DEFENDANT: I am.

(ECF No. 381-5 at 3-4). Furthermore, Funk agreed that he understood the sentencing provision set forth in the plea agreement:

> THE COURT: Do you understand that you expose yourself to a minimum penalty of ten years' imprisonment and up to life by entering into this plea agreement?
>
> THE DEFENDANT: I do, Your Honor.

(*Id.* 17). Clearly, there is no merit to Funk's claim that he thought the plea agreement included a maximum sentence of ten years.

Nothing in the record substantiates Funk's current contention that he did not understand his obligations under the plea agreement, or that he was coerced into signing it. To the contrary, at the plea hearing, Funk confirmed that he understood what the plea agreement required of him; that he wanted the Sentencing Court to accept the plea agreement; that he entered into the plea agreement voluntarily and of his own free will; that he had no questions or second thoughts about entering the guilty plea; and that he was not coerced or intimidated into signing the plea agreement. (ECF No. 381-5 at 6-7, 25).

It has been well established that to prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 694. Funk does neither in the instant petition. Funk cannot show that LaFon's representation fell below an objective standard of reasonableness because the record reflects that Funk did understand the provisions and requirements of the plea agreement. Even if Funk could, he cannot show that but for the errors of counsel, the result of the proceedings would have been different. In fact, considering the alternative courses of action open to Funk, accepting the plea agreement was an intelligent choice. *Alford*, 400 U.S. at 31. As has been established by the record,

the strength of the evidence against Funk was quite impressive. The likelihood that Funk would have been acquitted, or would have received a lesser sentence had he been convicted by a jury, is minimal. The options available to Funk at the time of his plea negotiations did not include any easy path to a reduced sentence. The 262-month sentence he is currently serving is not because of any deficiency of counsel or lack of understanding of the plea agreement, but because that is the punishment prescribed by the plea agreement, which he voluntarily and knowingly accepted. As such, the undersigned **FINDS** that Funk freely and intelligently entered a guilty plea pursuant to the terms of the plea agreement, and that his related claim of ineffective assistance of counsel does not satisfy either prong of the *Strickland* test. As no deficiency in his counsel's performance affected the voluntary and knowing nature of his guilty plea, Funk is not entitled to relief on this ground.

### C.  Ground Three: The Guilty Plea was Not Supported by a Sufficient Factual Basis

Funk's final claim is that the plea agreement was not supported by a sufficient factual basis and thus is invalid and must be vacated. (ECF No. 363 at 7). His argument relies on the fact that he agreed to plead guilty to a count which required a showing that there was at least 500 grams of methamphetamine involved in the conspiracy. (*Id.*). He instead contends that the factual basis only supports, at most, a violation of 21 U.S.C. § 841(b)(1)(B)(viii) because the facts "only establish 138.87 grams of methamphetamine" in his possession (*Id.*).

Before a court may enter judgment on a plea of guilty, it must find a sufficient factual basis to support the plea. *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997). In making the Rule 11(b)(3) determination, the district court "possesses wide

discretion," and it "need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense." *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *Mitchell*, 104 F.3d at 652). A "stipulated recitation of facts alone [is] sufficient to support a plea ..." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996). So long as "the district court could reasonably have determined that there was a sufficient factual basis based on the record before it," there will be no finding of an abuse of discretion. *United States v. Mastrapa*, 509 F.3d 652, 659-60 (4th Cir. 2007). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Estepp v. Ballard*, No. CIV.A. 3:08-0102, 2010 WL 3702594, at *7 (S.D.W. Va. Sept. 16, 2010) ("[W]hen evaluating a claim of ineffective assistance of counsel post guilty plea, statements made under oath affirming satisfaction with counsel are binding absent clear and convincing evidence to the contrary.") (citing *Blackledge v. Allison*, 431 U.S. 63, 97 (1977)).

Funk's argument lacks merit because there is a sufficient factual basis in the record for his guilty plea. Funk pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine. Twice during the plea hearing, Funk volunteered that he went to Atlanta and purchased "more than 500 grams" of methamphetamine to sell for profit. (ECF No. 381-5 at 10). Therefore, Funk conceded the facts necessary to convict him on the conspiracy charge:

> THE COURT: Tell me, in your own words, what you did that makes you guilty of a conspiracy to distribute 500 grams or more of a substance containing methamphetamine.
>
> THE DEFENDANT: I traveled to Atlanta to purchase the methamphetamines for a profit.

THE COURT: How much?

THE DEFENDANT: Not very much.

THE COURT: Tell me a little more about what all was going on in this criminal –

THE DEFENDANT: More than 500 grams.

THE COURT: Huh?

THE DEFENDANT: More than 500 grams.

THE COURT: Was that on that trip?

THE DEFENDANT: That was altogether.

(ECF No. 381-5 at 10). When elaborating on the quantity of methamphetamine obtained by Funk, the Government argued that, even though Funk's plea was to 500 grams or more of methamphetamine, the evidence supported a much greater quantity. Funk disagreed with the amount advocated by the Government, but once again agreed that he obtained 500 grams of methamphetamine to sell.

MR. BACAJ: Your Honor, the evidence that would have been set forth at trial would show quite the opposite. In fact, I would -- I would have anticipated that witnesses at trial would have testified that Mr. Funk obtained four kilograms of methamphetamines in Atlanta.

THE COURT: How many grams is that?

MR. BACAJ: Your Honor, I'm going to say that is 4,000 grams of methamphetamines, which would be like eight times the amount required by the statute.

THE COURT: What do you say to that, Mr. Funk?

THE DEFENDANT: I would say that it wasn't –

THE COURT: I need you to stand.

THE DEFENDANT: No, Your Honor, I don't -- I don't agree with the four kilos.

THE COURT: Do you agree with the 500?

THE DEFENDANT: Yes, 500.

(ECF No. 381-5 at 11-12). Funk now attempts to limit the quantity of drug attributable to him by referencing the stipulation of facts. Although the stipulation of facts only specifically mentioned the 138.87 grams of methamphetamine found in Funk's hotel room, (ECF 381-3 at 8), it does not indicate that 138.87 grams was *all* of the methamphetamine obtained during the trip to Atlanta, nor is the stipulation the only evidence of the drug quantity Funk possessed. As LaFon notes in his affidavit, there were photographs of Funk and his co-conspirators on the trip to Atlanta in which four kilograms of methamphetamine were obtained. (ECF No. 381-4 at 4). There were photographs and video recordings of Funk handling multiple kilos of methamphetamine, (*Id*.), and there were statements by witnesses and co-conspirators confirming that Funk obtained 4 kilograms of methamphetamine when in Atlanta, and that he sold some of it prior to the seizure of the 138.87 grams. (ECF No. 245 at 18-22). Finally, Funk's own testimony at Ms. Burkholder's trial establishes that he obtained 4 kilograms of methamphetamine in Atlanta. (ECF No. 381-2 at 11-22).

From Funk's testimony during his plea hearing, it is clear that there was a sufficient factual basis for the plea, which the District Court rightly found. (381-5 at 16). Funk's self-serving and unsubstantiated arguments that the evidence only proves that he obtained 138.87 grams of methamphetamine, and that his counsel's failure to challenge the basis of the plea deprived him of the effective assistance of counsel, fall well short of the requirement that he provide clear and convincing evidence sufficient to overcome his sworn statements made at the plea hearing, as well as at Burkholder's trial. Funk is therefore bound by the representations he made under oath during the plea colloquy, pursuant to *Fields*, 956 F.2d at 1299. If Funk did not wish to admit that he traveled to

24

Atlanta to purchase more than 500 grams of methamphetamine, then he should not have voluntarily done so on multiple occasions during the plea colloquy, nor should he have been photographed or appeared on videotape handling kilos of methamphetamine in his RV. He did, however, and that evidence provides a sufficient factual basis for the plea agreement. With respect to Funk's related ineffective assistance of counsel claim, because the plea was well supported by the facts, LaFon was not ineffective for failing to challenge the plea's factual basis. *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (holding that an attorney is not ineffective for failing to raise a futile objection). Accordingly, the undersigned **FINDS** that Funk is not entitled to relief on this claim.

In summary, the undersigned has considered all of Funk's claims and concluded that they clearly fail to state a claim which entitles him to relief; therefore, the undersigned **FINDS** that Funk's § 2255 petition should be dismissed.

## IV.    Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that Funk's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 363), be **DENIED**; Funk's Motion for Reconsideration of Order Denying Motion for Extension of Time, (ECF No. 413), be **DENIED**; and that this civil action be **DISMISSED**, with prejudice, and **REMOVED** from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall

have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: August 6, 2021

Cheryl A. Eifert
United States Magistrate Judge